UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDJANN HENRIQUE DOS SANTOS,

Petitioner,

v.

KIRSTJEN M. NIELSEN;
CHRISTOPHER CRONEN;
YOLANDA SMITH; and
STEVEN M. TOMPKINS,

Respondents.

C.A. No. 18-10310-MLW

RESPONDENTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS AMENDED PETITION

INTRODUCTION

Petitioner is subject to a final order of removal and is currently in the custody of the Immigration and Customs Enforcement ("ICE") agency while it attempts to execute that valid removal order. Petitioner's most recent Motion to Re-open with the BIA was denied and ICE has been making efforts to remove him but it has been unsuccessful because Petitioner will not cooperate with the Brazilian Consulate to issue travel documents. Accordingly, his allegation that his continued detention is unlawful is without merit. On March 28, 2018, Defendants filed their Motion to Dismiss the Petition in this case. *See* Docket Entry No. 18. Petitioner was scheduled to file a response to that Motion on April 4, 2018; however, on April 5, 2018, Petitioner filed his First Amended Petition ("Amended Petition") claiming that his constitutional right to marry was violated by Respondents when they denied his request to marry his fiancé in light of his efforts to thwart Respondents' execution of his final order of removal. *See* Amended

Petition, p. 2, ¶ 4. Petitioner maintains that his inability to marry has affected his ability to obtain lawful permanent resident status without need to leave the United States. *Id*.

To the extent he is challenging the execution of his removal order, this Court lacks subject matter jurisdiction under 8 U.S.C. § 1252(g), as amended by the REAL ID Act of 2005. Next, Petitioner's understanding of the 90-day detention period is fatally flawed and has no application to this litigation which is governed by the dictates of *Zadvydas v. Davis*, 533 U.S. 628 (2001). Lastly, Respondents did not violate any Due Process rights of Petitioner when it denied his request to marry.

For the reasons stated herein, the Petition should be dismissed under Fed. R. Civ. P. Rules 12(b) (1) and (6).

FACTS ALLEGED IN AMENDED PETITION

Petitioner Edjann Henrique Dos Santos ("Petitioner") is a native and citizen of Brazil who entered this country in 2002 on a visitor visa. *See* Amended Petition, ¶ 13. On August 1, 2008, Petitioner's wife filed a Form I-130 visa application for him to become classified as an immediate relative of a United States citizen. *Id*., ¶ 14. The United States Citizenship and Immigration Service ("CIS") denied the Petitioner's related discretionary application to adjust status to lawful permanent resident as a result of Petitioner's conviction as a juvenile. *Id*.

Petitioner initiated proceedings in the Immigration Court and, while his immigration case was pending, on December 12, 2010, Petitioner was arrested and charged with: (1) operating under influence (OUI); and (2) reckless operation of a motor vehicle. *Id*., ¶ 15. Petitioner accepted a Continuance Without a Finding ("CWOF") to Count 1 and a reduced charge to Count 2. *Id*. On February 28, 2012, the Immigration Court denied Petitioner's lawful permanent resident (LPR) application as a result of his motor vehicles offenses. *Id*., ¶ 16. On May 29,

2014, the BIA affirmed the IJ's decision and his order of removal became final. *Id*., ¶ 17. Petitioner does not assert that he ever sought the prescribed judicial review of that BIA removal order.

On March 9, 2014, Petitioner divorced his wife who had previously filed the application for LPR status which was denied in February, 2012. *Id*., ¶ 21. Petitioner then became engaged to a U.S. citizen. *Id*.

On June 14, 2016, Petitioner was taken into custody by ICE for removal purposes. *Id*., ¶ 18. On August 21, 2017, the Fall River District Court vacated Petitioner's OUI and negligent operation convictions on grounds that he received ineffective assistance of counsel. *Id*., ¶ 20. In September 2017, Petitioner filed another motion to reopen ("MTR") with the BIA which was denied as untimely. *Id*.

In January 2018, Petitioner filed a request with the immigration court for a detention bond hearing which was denied because he has a final order of removal. *Id*., ¶ 28. On March 12, 2018, ICE denied Petitioner's request to marry as a result of his repeated refusal to comply with his obligations under law to assist in his removal by applying for travel documents for his return to Brazil. *Id*., ¶ 25, *Exhibit A* attached thereto.

As relief, Petitioner asserts that ICE should have been required to allow him to marry his fiancé despite his refusal to conform with the laws of the United States, *id*., ¶¶ 34, 47, as well as provide him with a bond hearing where ICE would have the burden by clear and convincing evidence to show that Petitioner poses a danger to the community or is a flight risk. *Id*., ¶ 39. Petitioner maintains that his continued detention violates the Due Process Clause of the Fifth Amendment to the Constitution. *Id*., ¶ 47.

For the reasons set forth below, the Petition should be dismissed.

ARGUMENT

**A. Petitioner Is Lawfully Detained By Respondent Pending Execution of His Removal Order**

Petitioner raises no challenge to his final administrative order of removal,[1] but instead petitions this Court to remedy his purported “unlawful detention” pending execution of that order. *See* Petition, p.1. In this regard, the Supreme Court in *Zadvydas v. Davis, et al.*, 533 U.S. 678 (2001) recognized six months as a presumptively reasonable period of post-final order detention within which to allow the government to accomplish an alien's removal, and said that, “ for the sake of uniform administration in the federal courts, we recognize that period.” *Id.* at 701.

However, because of Petitioner's unlawful actions to prevent his removal to Brazil, his continued detention pending renewed efforts aimed at executing his removal order is authorized by section 241(a)(1)(C) of the Immigration and Nationality Act (“Act”), 8 U.S.C. § 1231(a)(1)(C) (“The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien’s removal subject to an order of removal.”) (emphasis added). *See also Lema v. U.S.I.N.S*, 214 F. Supp. 2d 1116, 1117 (W.D. Wash. 2002) (“ 1231(a)(1)(C) evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him.”); *Powell v. Ashcroft, et al*., 194

[1] Nor could he in the district court after the enactment of the REAL ID Act of 2005. *Ishak v. Gonzalez*, 422 F.3d 22, 29 (1st Cir. 2005) (“The plain language of these [REAL ID Act] amendments, in effect, strips the district court of habeas jurisdiction over final orders of removal, including orders issued prior to the enactment of the REAL ID Act ... Congress has now definitively eliminated any provision for [habeas] jurisdiction.”).

F. Supp. 2d 209, 210 (E.D.N.Y. 2002) ("if an alien acts to frustrate the INS's ability to remove him, the removal period is tolled during the period of the alien's actions" under 8 U.S.C. § 1231(a)(1)(C)). Here, ICE was ready, willing, and able to remove Petitioner from the United States, however, Petitioner has taken steps to thwart his removal and he has been issued several Notices of Failure to Comply as a result of his refusal to cooperate with ICE to effectuate his removal. *See Exhibit A* attached Amended Petition.[2] Needless to say, Petitioner's failure to cooperate with the Brazilian Consulate to effectuate his removal has resulted in ICE's failure to obtain travel documents in this regard; otherwise, Petitioner would be in Brazil today. *Id*.

Under these circumstances, as noted above, the law is well-established that in the situation of an alien who prolongs his own detention by frustrating his removal, the *Zadvydas* rationale does not "save" him from continued detention to effectuate removal. *See Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003) ("when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future."); *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when the alien is the cause of his own detention . . . . [so that] *Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal."). *See also Sango-Dema v. District Director, I.N.S.*, 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (where alien petitioner "has refused to complete any of the applications necessary to facilitate his return to his country of origin" no

[2] Petitioner's failure to comply is also discussed in the Declaration of Acting Assistant Field Office Director Marc McGee ("McGee Decl."), *Exhibit A* to the Memorandum of Law filed in Support of Respondents' Motion to Dismiss. *See* Docket Entry No. 19-1.

arguable constitutional right to be free from indefinite detention is implicated, because "an alien cannot trigger such a right with his outright refusal to cooperate with INS officials.").

Although ICE will continue its efforts to seek Petitioner's removal to Brazil, in keeping with the spirit of the law cited above, this Court has repeatedly found that an alien's blatant measures taken to thwart ICE in its removal efforts subjects them to continued detention as a matter of law. *See Agbanyo v. Cabral*, 518 F. Supp. 2d 326, 327 (D. Mass. 2007) (where "petitioner has not only failed to cooperate, but has actively obstructed efforts to remove him, his petition must be denied.") *cited with approval in Akande v. Horgan*, Civil Action No. 11913-NMG, 2012 WL 1207217 (D. Mass. April 9, 2012) (deportee who assaulted deportation officer at Logan Airport during his scheduled removal subject to continued detention and his Petition should be denied). *See also Conteh v. Smith*, Civil Action No. 16-10663-LTS, 2016 WL 6609173 (D. Mass. Nov. 7, 2016) (petitioner cannot allege prolonged detention under *Zadvydas* where he physically resisted ICE's efforts to remove him; thus, petition should be dismissed). Accordingly, this Court should dismiss the Petition for its failure to state a valid claim under *Zadvydas*.

### B. The Court does not have subject matter jurisdiction to review ICE's actions related to execution of removal orders.

Following well-established legal principles, to the extent Petitioner is challenging the execution of his removal order, this Court does not have subject matter jurisdiction to review ICE's actions in this regard. Under 8 U.S.C. § 1252(g) "no court shall have jurisdiction to review any cause or claim . . . arising from the decision or action by the [Government] to … *execute removal orders* against any alien . . .." (Emphasis added). *See generally Reno v. Am.-Arab Anti-Discrimination Comm. et al.*, 525 U.S. 471, 483 (1999) ("*AADC*"). In *AADC,* the Supreme Court noted that "There was good reason for Congress to focus special attention upon,

and make special provision for, judicial review of the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing], *[and] execut[ing] removal orders* . . ..” *Id*. (Emphasis added). Indeed, “[Because] [a]t each stage the Executive has discretion to abandon the endeavor . . . Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed.” *Id*. at 483-485. (Emphasis added).

Likewise, in 2005, Congress amended 8 U.S.C. § 1252(g) to clarify unequivocally that a district court lacks habeas corpus jurisdiction to enjoin removal of an alien from the United States. Section 106(a)(3) of the Real ID Act of 2005 (the Real ID Act) states:

> 242(g) EXCLUSIVE JURISDICTION.--Except as provided in this section and notwithstanding any other provision of law ***(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title,*** no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

(Amending language in emphasis). Shortly thereafter, this circuit held that the “[E]nactment of the Real ID Act . . . in the plainest of language, deprives the district courts of jurisdiction in removal cases.” *Ishak v. Gonzales*, 422 F.3d 22, 28 (1st Cir. 2005).[3] The Real ID Act also amended 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g), to expressly include 28 U.S.C. § 2241, as being within the enumerated judicial review and injunction bars. *See Aguilar*, 510 F.3d 1, 9

---

[3] *Cf. Aguilar v. U.S. Immigration & Customs Enf.*, 510 F.3d 1, 9-11 (1st Cir. 2007) (holding that district court review is available only for claims that are independent of or collateral to the removal process, such as continued detention).

(characterizing the scope of section 1252(b)(9) as "breathtaking", and declaring that by its enactment "Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings.").

These Real ID Act amendments make it abundantly clear that only the court of appeals has subject matter jurisdiction respecting "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States", and respecting "any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this [INA]." *See* 8 U.S.C. §§ 1252(b) (9) and 1252(g), respectively, as amended by the Real ID Act. For these reasons, despite Petitioner's request otherwise, this Court does not have subject matter jurisdiction to review such removal orders.[4][5] *Ishak*, 422 F.3d at 29 ("The plain language of these

---

[4] Section 106(a)(1)(B) of the Real ID Act creates new INA section 242(a)(5), 8 U.S.C. § 1252(a)(5):

> (5) EXCLUSIVE MEANS OF REVIEW- Notwithstanding any other provision of law (statutory or non-statutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms `judicial review' and `jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or non-statutory).

[5] *See* 8 U.S.C. § 1252(b)(2) (prescribing venue in review of a removal order, "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings").

amendments, in effect, strips the district court of habeas jurisdiction over final orders of removal. . . . Congress has now definitively eliminated any provision for [habeas] jurisdiction.").[6]

In short, this Court cannot review Petitioner's Petition to the extent he seeks an injunction against his removal. *Tejada v. Cabral,* 424 F .Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—*be they stays or permanent injunctions*—were to be issued by the appropriate court of appeals.") (emphasis added). *Cf. Aziz v. Chadbourne,* 2007 WL 3024010, *2 (D. Mass. Oct. 15, 2007) (acknowledging that 8 U.S.C. § 1252(g) bars granting of any stay of removal for alien admitted under Visa Waiver Program who had pending adjustment application). Stated differently, through the Real ID Act, Congress unequivocally indicated its intent to eliminate habeas corpus review of removal orders, leaving jurisdiction to review removal orders like in this case with the circuit courts of appeals.[7] Thus, the Petition should be dismissed.

---

[6] Habeas challenges to pure detention—that is, challenges only as to the fact of detention or continuing detention and not vicariously to the lawfulness of a removal order—are not affected by the Real ID Act section 106 jurisdictional amendments. *See* Conference Report, 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., *available at* 2005 WL 1025891 (May 3, 2005) ("Moreover, section 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders."). In the instant case, Petitioner has been detained for execution of his removal order only 28 days, and is well within the presumptively lawful 6-months period of post order detention approved by the Supreme Court. *Zadvydas*, 533 U.S. at 701 (2001) ("for the sake of uniform administration in the federal courts, we recognize that period").

[7] *See* Conference Report, 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., *available at* 2005 WL 1025891 (May 3, 2005) ("Under the amendments in section 106, all aliens will get review in the same forum—the courts of appeal."). It is well-settled in this circuit that there is no constitutional right to remain in the United States to pursue administrative relief applications in the face of a deportation or exclusion order. *See Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970); *Smith v. Immigration and Naturalization Service*, 684 F. Supp. 1113, 1118 n.2 (D. Mass 1988); *Ansong v. District Director*, 596 F. Supp. 882, 888 (D. Me. 1984). *Cf. Khalaj v. Cole*, 46 F.3d 828, 835 (8th Cir. 1995) (rejecting petitioner's view of due process that "would prohibit the INS from ever attempting to deport an alien pursuant to a valid deportation order if

Also, as a practical matter, Petitioner has had sufficient notice and an opportunity to be heard on the question of his removability. Without undue repetition, Petitioner was found removable, his relief applications were denied by an Immigration Judge, and he appealed the determination administratively to the BIA which, on May 29, 2014, affirmed the decision of the Immigration Judge making his removal order final. Petitioner could have sought further judicial review within 30 days of the BIA's May 29, 2014 removal decision, but he chose not to do so. In the end, judicial review of Petitioner's removal order is exclusive to the First Circuit Court of Appeals. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9).

Finally, contrary to Petitioner's assertion, ICE's decision to detain him pursuant to a valid removal order does not violate his due process rights. Indeed, "Executive actions that do no more than comport with valid statutory commands simply are not the stuff from which substantive due process violations can be fashioned." *Herrera-Inirio v. INS*, 208 F.3d 299, 309 (1st Cir. 2000). Moreover, the exercise of ICE administrative discretion in declining to authorize release from detention pending his removal does not implicate any due process concern. *Ticoalu v. Gonzales*, 472 F.3d 8, 11(1st Cir. 2006) ("Due process rights do not accrue to discretionary forms of relief"), *citing DaCosta v. Gonzales*, 449 F.3d 45, 49 (1st Cir. 2006)); *see also Jupiter v. Ashcroft*, 396 F. 3d 487, 492 (1st Cir. 2005)("[P]etitioner cannot premise a colorable due process claim solely on the denial of an opportunity to depart later.").

At bottom, all of Petitioner's cognizable remedies are administrative or at the circuit court of appeals level. Without undue repetition, this Court should dismiss the Petition for its lack of subject matter jurisdiction.

---

any further administrative relief, such as motions to reopen, were available"), *citing Bothyo v. Moyer*, 772 F.2d 353, 358 (7th Cir. 1985).

### C. Petitioner's Understanding of the 90 Day Detention Provision is Flawed as a Matter of Law

Petitioner seemingly argues in his Petition that since 90 days expired from the date his removal order became final, ICE was precluded from detaining him without first providing him with advance notice of its intent to detain pending his removal and must also provide him with a bond hearing wherein ICE bears the burden of showing by clear and convincing evidence that Petitioner does not pose a risk of flight or danger to the community. *See* Amended Petition, ¶ 30. Nonetheless, the regulatory sections cited by Petitioner clearly address only "continued detention" of aliens already in ICE custody pending removal, and do not purport to govern initial apprehension of final removal order.[8] In other words, the regulations cited by Petitioner are inapplicable because they relate to ICE's decision to *continue* the detention of an alien if, after 90 days, removal has not yet been accomplished.

More fundamentally, the underlying facts of the *Zadvydas* case itself belie Petitioner's pervasive misunderstanding of the immigration removal statute. In *Zadvydas*, the Supreme Court held that it was deciding issues concerning final removal order detention *beyond* the 90 day removal period, and said the issue was "whether this post-removal-period statute [8 U.S.C. § 1231(a) (6)] authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal.

[8] *See* 8 C.F.R. §§ 241.4(a) ("scope" of section directed at authority to "*continue* an alien in custody or to grant release") (emphasis added); 241.4(e)("[c]riteria for *release*") (emphasis added); 241.4(f) (factors to be weighed in considering "whether to recommend *further detention or release*") (emphasis added); 241.4(h)(2) (30 days' advance notice provided to alien "so that the alien may submit information in writing in support of his or her *release*") (emphasis added); 241.4(k)(1) (timing of reviews as to whether aliens "to be *released* from custody, *or . . . continued in detention* pending removal") (emphasis added). *See also Zadvydas*, 533 U.S. at 683 ("Related Immigration and Naturalization Service (INS) regulations add that the INS District Director will initially review the alien's records to decide whether *further detention or release* under supervision is warranted after the 90–day removal period expires. 8 C.F.R. § 241.4(c)(1), (h), (k)(1)(i) (2001).") (citation in the original).

*Zadvydas*, 533 U.S. at 682 (emphasis in original). The Supreme Court added, "we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id*. at 701.

The *Zadvydas* Court clearly stated with respect to the post-removal period detention authorized under 8 U.S.C. § 1231(a)(6) that, "[a]fter all, the provision is part of a statute that has as its basic purpose *effectuating an alien's removal*." *Zadvydas*, 533 U.S. at 697 (emphasis added). *Cf. R-G. v. Smith*, Civil Action No: 17-11300-RGS (Electronic Order attached hereto as *Exhibit B*) (D. Mass. July 19, 2017) (addressing same argument and observing "[a]lthough the Supreme Court has identified an implicit reasonable time limitation to the discretionary detention of an alien *beyond* the removal period, *Zadvydas v. Davis*, 533 U.S. at 682 (2001) (the presumptively reasonable limit to post-removal-period detention is six months), petitioner has not identified any precedent questioning the Attorney General's absolute authority to detain an alien *during* the removal period") (internal quotation marks omitted; emphasis in original).[9]

The Supreme Court set out its view of the post-removal-period habeas review calculus in plain terms: "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority." *Zadvydas*, 533 U.S. at 699. As the Court elaborated, a

---

[9] *See also R-G. v. Smith*, Civil Action No: 17-11300-RGS (D. Mass. July 24, 2017), *Exhibit A* attached hereto, ("Petitioner first contends that because the order of removal became final in 2011, the 90-day removal period and the associated statutory authority to detain him, had long since expired. However, the 'removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien... conspires or acts to prevent the alien's removal subject to an order of removal.' 8 U.S.C § 1231. It is undisputed that petitioner hopes to remain in the United States, and sought and received numerous stays to prevent his removal. *Petitioner cannot affirmatively seek discretionary relief from the government as a shield against immediate removal and then use that same benefit as a sword against the government that awarded it*.") (emphasis added).

habeas court "should measure reasonableness primarily in terms of *the statute's basic purpose, namely, assuring the alien's presence at the moment of removal*." *Id.* (emphasis added).

      Here, the Petitioner was ordered removed and thereafter was detained by ICE for the purpose of executing that removal order.  Because he has a final order of removal, his detention is governed by the dictates of *Zadvydas, supra.*  The law does not impose any further duty on the government than to attempt to effectuate Petitioner's removal once he is detained.  The government has attempted to do so but has been thwarted in its efforts by Petitioner as he refuses to cooperate with the Brazilian Consulate in its efforts to issue travel documents.  *See Exhibit A* attached to Amended Petition.  The notion that the government has the obligation to provide Petitioner with a bond hearing in which it has the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community is without merit on two grounds.  First, as the IJ informed Petitioner when he sought release on bond, Petitioner is subject to a final order of removal and thus is *not* entitled to a bond hearing.  *See* 8 C.F.R. § 1236.1(d) (1).  *See also R-G v. Smith,* 2017 WL 4225626, 217 F. Supp. 3d 331, 335 (D. Mass. 2017) (alien subject to final order of removal not eligible to bond hearing).  Next, the Supreme Court just rejected the very argument made by Petitioner regarding the burden being placed on the government in discretionary bond hearings.  More specifically, the Supreme Court held that nothing within 8 U.S.C. § 1226(a) places the burden on the government to show by clear and convincing evidence that an alien would not pose a flight risk or danger to the community should he or she be released from custody.  *See Jennings, et al. v. Rodriguez, et al.,* 138 S. Ct. 830, 847 (2018).  Petitioner's attempts to circumvent the ruling should be denied.

**D. Petitioner's Assertion That ICE Violated His Constitutional Right To Marry Is Without Merit.**

Undoubtedly, a U.S. citizen possesses a fundamental right to marry. *See Zablocki v. Redhail*, 434 U.S. 374, 386 (1998). Assuming, *arguendo*, that Petitioner maintains that same right[10], *see Theck v. Warden*, 22 F. Supp. 2d 1117 (C.D. 1998), ICE was justified in its refusal to grant, in its discretion, his request to marry when he has flaunted the immigration laws of this Country. Indeed, since July 2017, Petitioner has refused to cooperate with ICE in its efforts to execute his removal order. *See Exhibit A* attached to the Amended Petition. As articulated previously, 8 U.S.C. § 1231(a)(1)(C) provides that an alien's detention will be extended should he refuse to make timely application for his removal. Petitioner's refusal to abide with the immigration laws should not be rewarded with the discretionary relief of marriage so he can then attempt to adjust his status to attempt to prolong his deportation.

Next, even if Petitioner was married, he has no entitlement to remain in the United States while his unlawful presence waiver (Form I-601A) is adjudicated and, thus, has failed to state a cognizable due process claim against Respondents. *See* 8 C.F.R. 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver dose not constitute a grant of lawful immigration status or a period of stay authorized by the Secretary"). In short, Petitioner has not, as he argues in his Petition, been denied any "right to seek relief." *See* Amended Petition, ¶¶ 44, 46. The regulations cited by Petitioner allows a waiver of inadmissibility to be sought from *both* within and outside the United States. *See* 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i).

---

[10] Petitioner's ability to marry emanates from the National Detention Standards. www.ice.gov/detention-standards/2000. In the Subsection addressing an alien's request for marriage, ICE, in its discretion, may decline the marriage request where there is a compelling government interest in doing so. *See Exhibit B* attached hereto, Section III, A. 2(e). Here, the Petitioner has flaunted the immigration laws in refusing to assist in his removal which lead to ICE's declination of his marriage request.

Because Petitioner's removal does not preclude him from seeking the *same* waiver of unlawful presence from outside the United States, he has not been denied any due process right to seek relief. *See id.* Accordingly, what remains is his claim that he has a right to stay in the United States despite his final order of removal. *See* Amended Petition, ¶ 44. The Supreme Court has recognized "There is no such constitutional right." *Kerry v. Din,* 576 US __, 135 S. Ct. 2128 (2015).

As discussed above, Petitioner is subject to a lawful order of removal. Because he has already been ordered removed in proceedings that are not at issue in this case, he no longer has a due process right to remain in the United States. *See Enwonwu v. Gonzales*, 438 F.3d 22, 30 (1st Cir. 2006) (refusing to find a due process right to remain in the United States where the alien had been ordered removed); *Pena-Muriel v. Gonzales*, 489 F.3d 438, 433 (1st Cir. 2007) ("[T]he fact that a vacatur may be an "appropriate" basis for reopening a deportation order does not establish a due process right to such reopening after one has departed the country."); *Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass. 1988) ("Obviously, an alien cannot claim a constitutional right to remain in this country because of the existence of a marital relationship with a citizen"). Similarly, his U.S. citizen potential spouse, does not have a due process right to live with her alien spouse in the United States. *Din,* 135 S. Ct. at 2128 ("In particular, she claims that the Government denied her due process of law when . . . it deprived her of her constitutional right to live in the United States with her spouse. There is no such constitutional right.").

Finally, the mere availability of the unlawful presence waiver from within the United States does not create a due process right. To have a due process interest in a benefit "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock, Colo. V. Gonzales,* 545 U.S. 748, 756 (2005). The claimant must "have a legitimate

claim of entitlement to it." *Id.* These entitlements are not created by the Constitution, but by independent source of law such as a statute. *Id.* Generally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Clukey v. Town of Camden*, 717 F.3d 52, 56 (1st Cir. 2013); *see also Chun Xin Chi v. Holder*, 606 F.3d 6, 10 (1st Cir. 2010) ("Because an alien has *no* right or entitlement to a reopening, he or she has *no* protected liberty or property interest in that remedy."); *Juniper v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005) ("Adjustment of status is not an entitlement, but rather, a matter of administrative discretion.").

Petitioner has no entitlement to remain in the United States while his unlawful presence waiver is adjudicated. There is no legitimate claim of entitlement because the statutes and regulations governing the benefit make it available from *both* within and outside the United States. *See Town of Castle Rock*, 545 U.S. at 756; 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary."). Petitioner's "need or desire" to stay with his fiancé in the United States while his waiver is adjudicated is not sufficient to create a liberty or property interest where Petitioner has a lawful final order of removal and the law governing the waiver expressly denies such a right exists. *See id.; see also Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970) (there exists no right to remain in United States to seek alternative immigration status where alien has final order of removal); *cf. Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007) ( "deportations of parents are routine and do not of themselves dictate family separation. If there were such a right, it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged or dangerous military service").

Indeed, in a similar case as here, this Court (Woodlock, J.) has held that even though an alien has a pending I-130 application which will provide him an immediate immigrant visa, alien has no right to remain in the United States to pursue adjustment of status where he has existing final order of removal. *See Li v. Hodgson,* 2012 WL 6738262 * 3 (D. Mass. Dec. 27, 2012); *see also Smith v. Immigration and Naturalization Service*, 684 F. Supp. 1113, 1118 n.2 (D. Mass 1988); *Ansong v. District Director*, 596 F. Supp. 882, 888 (D. Me. 1984); *Cf. Khalaj v. Cole*, 46 F.3d 828, 835 (8th Cir. 1995) (rejecting petitioner's view of due process that "would prohibit the INS from ever attempting to deport an alien pursuant to a valid deportation order if any further administrative relief, such as motions to reopen, were available"), *citing Bothyo v. Moyer*, 772 F.2d 353, 358 (7th Cir. 1985). Moreover, whether to grant a stay of removal pending the waiver application process is within the agency's discretion. *See* 8 C.F.R. § 212.7(e)(2)(i); 241.6(a) (allowing for an administrative stay of removal). Therefore, Petitioner cannot meet the threshold requirement of showing that he has a protected liberty or property interest in remaining in the United States while his waiver is adjudicated and this Court should dismiss his due process claims based on this misconception.[11] *See Chun Xin Chi* 606 F.3d at 10.

[11] Even if such a due process right existed – which it does not – the availability and adjudication of Form I-246, administrative stay of removal, is a "fundamentally fair proceeding" where ICE may consider factors, such as community and family ties, in adjudicating the request. *See Matias v. Sessions,* 871 F.3d 65, 71 (1st Cir. 2017) ("Procedural due process protects a right to a fundamentally fair immigration proceeding; but few proceedings are perfect and one can have real errors, including ones that adversely affect the alien's interests, without automatically violating the Constitution."); 8 C.F.R. § 241.6 (identifying factors that may be considered when adjudicating an I-246). Thus, the availability and adjudication of the Form I-246 would satisfy any procedural due process protections due.

## CONCLUSION

Because the Petition fails to state a claim of unlawful detention, and the fact that this Court lacks subject matter jurisdiction, this action should be dismissed.

                                        Respectfully submitted,

                                        ANDREW E. LELLING
                                        United States Attorney,

By:   */s/ Michael Sady*
        Michael Sady (BBO #552934)
        Assistant U.S. Attorney
        United States Attorney's Office
        1 Courthouse Way, Suite 9200
        Boston, MA  02210
        (617) 748-3100
        Michael.Sady@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Notice filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                        */s/ Michael Sady*
                                        Michael Sady
                                        Assistant U. S. Attorney

Dated:  April 27, 2018